IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    *Plaintiff*,

v.

EDWARD LUBIN, M.D.,

    *Defendant*.

_____/

Case No. 8:21-cv-02231

### DEFENDANT'S, EDWARD LUBIN, M.D., MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendant, Edward Lubin, M.D. ("Dr. Lubin"), by and through his undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a) and 9(b), respectfully moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and failure to plead fraud with specificity. In support thereof, Dr. Lubin states the following:

## I. INTRODUCTION & BACKGROUND

On September 21, 2021, United States of America ("Plaintiff" or "Government") filed its complaint alleging, inter alia, that Dr. Lubin made false claims and made or used false records and statements in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 (a)(1)(A) and 31 U.S.C. § 3729(a)(1)(b). Specifically, Plaintiff alleges because Dr. Lubin was a member of Insys' speaker program, he received kickbacks to prescribe Subsys when it was not medically necessary and submitted false records or statements to Medicare for payment.

Unfortunately for The Government, while its Complaint serves as a broad indictment of Insys, its employees, and its sales and marketing practices, the Complaint fails to plead facts demonstrating that Dr. Lubin himself was aware of these bad acts or knowingly participated in fraudulent activity. Indeed, while the Government refers disparagingly to Insys and its speaker's program throughout the Complaint, it only addresses how speakers "such as Dr. Lubin" or "like Dr. Lubin" benefited from the Insys speaker's program, (Complaint ¶¶ 77, 116), rather than affirmatively allege any facts demonstrating that Dr. Lubin was aware of Insys's underlying motivations for its speaker's program or how Insys paid members of its speaker's program. Instead, the Government offers only supposition and conclusions—which are insufficient as a matter of law under Federal Rule of Civil Procedure 9(b)—from which it infers that Dr. Lubin's independent prescribing practices were fraudulent simply because of his work with Insys and because he prescribed Insys products. Without actual facts, rather than inferences, linking Dr. Lubin to Insys' bad acts, the Complaint should be dismissed.

The Government alleges—and Dr. Lubin does not dispute—that Dr. Lubin was a member of the Insys speaker program, that Dr. Lubin would periodically meet with medical professionals to discuss Subsys and how it may be indicated for use by certain patients, that Insys compensated Dr. Lubin for participating in the Insys speaker program, and that Dr. Lubin, while participating in the Insys speaker program, prescribed Subsys to a very small percentage of his patients. However, while the Government argues, among other things, that Insys instituted its speaker program

primarily to pay doctors to encourage them to prescribe Subsys, and that one of Insys' sales representatives falsified records regarding attendance and time spent on Dr. Lubin's speaking ventures, the Complaint contains no factual allegations that Dr. Lubin himself was aware of Insys' purpose behind its speaker program, nor does the Complaint include any factual allegation that Dr. Lubin personally falsified records or was aware they were falsified by Insys personnel.

For example, the Government's Complaint focuses on unidentified Pharmacist A, who attended a small presentation after business hours at an Italian restaurant "on the use of Subsys as opposed to similar drugs." (Complaint ¶ 109). While Pharmacist A "recalled that the event was not worth his time," the Government acknowledges that Dr. Lubin's presentation appeared to be on a medically relevant topic: the use of Subsys as opposed to alternative treatment regimens. (Complaint ¶ 109). And yet again, the Government attempts to draw inferences from facts stated and unstated to imply, rather than establish fraud. While the Government's Complaint frequently highlights speaking events that the Government claims to be unsuitably short, the Government does not identify how long this particular speaking event went on for. In addition, the allegation that this "was the only after-hours event that [Pharmacist A] was asked to attend," implies—without affirmatively stating—that Pharmacist A had never previously been asked to attend a drug presentation outside of business hours, or at a restaurant, and that holding a speaking presentation outside of business hours at a restaurant establishes that the presentation is an unusual practice that indicates fraud. In addition, while the Government criticizes Dr. Lubin for visiting Pharmacist

3

A at work multiple times thereafter for short visits, the Government does not disclose how many times Dr. Lubin and Pharmacist A met, or discloses the substance of their conversations. Instead, the Government infers that the location of the meetings and the duration of the meetings establishes fraud. Speculation about or inferences of fraud are insufficient to establish it under Rule 9(b).

The Government concedes in the Complaint that Insys admitted that its sales representatives were authorized "to falsify the names of attendees and their signatures," (Complaint ¶ 75), yet nowhere in the Complaint does the Government allege, let alone establish with provable facts, that Dr. Lubin was aware of or participated in these fraudulent practices. Indeed, the Government alleges that "Insys generated and kept forged sign-in sheets" for events that Dr. Lubin participated in, and notes that Dr. Lubin's name was misspelled on some of those forged sheets. (Complaint ¶ 113). Note here that the Government is not alleging that Dr. Lubin himself forged these documents (the misspelling of his own name would indicate that he was not involved); they are merely implying, without additional evidence, that Dr. Lubin knew they were being forged on his behalf. In fact, the Government admits in the Complaint that Dr. Lubin's Insys sales representative was personally reprimanded for falsifying sign-in sheet information, (Complaint ¶¶ 124-27) ("Upon information and belief, Sales Representative BW manipulated the signatures on the Insys sign-in sheets for Dr. Lubin's sham speaking events."), yet again offering facts establishing that Dr. Lubin was not responsible for falsifying documents, while implying that he did. While the Government claims that Pharmacist B believes that Dr. Lubin "falsely

4

used her signature" on an event sign-in sheet, (Complaint ¶ 119), a single unnamed Pharmacist's opinion on who generated a sign-in sheet, without any factual evidence tying Dr. Lubin to creating or adopting the sign-in sheet, cannot constitute evidence of fraud as a matter of law.

Additionally, while the Government argues that Dr. Lubin was paid for participating in speaker events that it believes did not happen, (Complaint ¶¶ 132-51), nowhere in the Complaint does the Government allege facts demonstrating that Dr. Lubin was aware he was receiving payment speaking events that did not happen, or with participants who did not attend. Given that the Government's allegations against Dr. Lubin flow from its belief that Dr. Lubin was knowingly accepting payment for sham events as cover to compensate him for prescribing Subsys, it is telling here that the Government does not offer facts to establish that Dr. Lubin knew he was being paid for these events, only that Insys knew he was. The lack of factual allegations tying Dr. Lubin personally to these internal Insys decisions is fatal to the Complaint.

While the Government also infers that Dr. Lubin's conduct while a member of the Insys speaker's program was fraudulent because Dr. Lubin wrote his first Subsys prescription for a Medicare recipient a day after joining the speaker's program, (Complaint ¶¶ 100-101), it's important to note here that the Government is not claiming that Dr. Lubin did not begin prescribing Subsys to patients until after he joined the Insys speaker's program. Given that the Government presumably has access to Dr. Lubin's entire prescribing history for Subsys, it's telling that the Government chose to highlight the weak temporal relationship between when Dr. Lubin joined the

5

Insys speaker's program and when his Medicare patients (as opposed to any of his patients) began to receive Subsys prescriptions.

Finally, while the Government offers evidence that Insys employees spoke internally about Dr. Lubin, (Complaint ¶¶ 90-91, 94-95), the Government offers no factual evidence that Dr. Lubin participated in or was aware of these conversations, or that these internal Insys conversations affected his pay as part of the Insys speaker's program.

Turning to Dr. Lubin's prescribing practices, the Government alleges that Dr. Lubin prescribed Subsys to patients regardless of their medical needs, and that his compensation for participating in the Insys speaker's program was "far in excess" of market value, was "formulated and based on" the prescriptions his referrals wrote, and "accounted for the volume of his referrals to Insys." (Complaint ¶ 27). However, the Complaint contains no discussion about the medical needs or histories of Dr. Lubin's patients to determine whether his prescriptions were clinically justifiable, does not identify what the "market value" is for similar speaker's programs, make any attempt to tie Dr. Lubin's compensation through the speaker's program to the number of prescriptions he wrote, or attempt to identify other prescribers who the Government alleges Dr. Lubin induced into writing Subsys prescriptions. The only allegations the Government alleges against Dr. Lubin in regard to Insys' kickback scheme is that he was a member of the speaker's program, (Complaint ¶ 87), that Dr. Lubin knew one of the organizers of the speaker's program and that the same organizer had visited his

office previously, (Complaint ¶ 90), and that an Insys sales representative had desk space at Dr. Lubin's office. (Complaint ¶ 94).

The Government's Complaint further assumes—without evidence—that the majority of Dr. Lubin's Subsys prescriptions were fraudulent simply because they were written for patients who did not have cancer or breakthrough cancer pain. However, the Government does not identify why Dr. Lubin prescribed Subsys to those patients, discuss with particularity whether any of those prescriptions were not appropriate or medically indicated, or address the fact that Medicare and TRICARE can and do authorize and pay for the use of medications for purposes other than those for which they were approved by the FDA (e.g. "off-label" use). The Government further criticizes Dr. Lubin for making presentations about Subsys to non-physician pharmacists (claiming that they were sham presentations designed to enrich Dr. Lubin rather than educate medical practitioners), while acknowledging in the Complaint that the FDA requires pharmacists who dispense TIRF drugs such as Subsys to be trained on proper indications for use and how to use them safely. Specifically, the Government acknowledges earlier in its Complaint that the FDA's TIRF REMS programs "require that TIRF medicines only be dispensed to an outpatient when the practitioner prescribing the drug, the patient and pharmacy dispensing the TIRF drugs are educated about the safe and effective use of TIRF drugs," (Complaint ¶ 11), meaning that the FDA required pharmacists to be trained in safe use and dispensing practices for TIRF drugs before the FDA would permit them to dispense them. By the Government's own admission, non-prescribing pharmacists are necessary participants

7

in and a vital part of the FDA's TIRF REMS programs, yet it nevertheless concludes that Dr. Lubin's decision to speak to pharmacists about Subsys is evidence fraudulent conduct. Speaking to program participants about a program drug cannot in and of itself be evidence of fraud.

The Government's Complaint also makes nonsensical factual allegations against Dr. Lubin. For example, the Government alleges that Dr. Lubin wrote "over 500 prescriptions for Subsys," that he prescribed Subsys to sixty-one patients, and that those prescriptions constituted "99% of Dr. Lubin's TIRF prescriptions." (Complaint ¶¶ 106, 152). Yet in the very next paragraph, the Government alleges that "the top three drugs" that Dr. Lubin prescribed during that time were TIRF drugs like Subsys. (Complaint ¶ 107). Dr. Lubin, as an interventional anesthesiologist, treated thousands of patients during the time period at issue in the Government's Complaint, the overwhelming majority of whom would have received more traditional pain management drugs rather than sub-lingual fentanyl sprays like Subsys.

Given the Government's failure to plead, with particularity, that Dr. Lubin prescribed or induced others to prescribe Subsys for patients for whom it was not medically appropriate, or that Dr. Lubin knowingly participated in the alleged bad acts of Insys and its employees, Dr. Lubin requests this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 8(a), 9(b), and 12(b)(6).

## ARGUMENT

### A. Legal Standard

A court may dismiss an action, or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2) a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," however, the complaint must allege more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544 at 570). A court is not required to accept as true legal conclusions couched as factual allegations, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Id*. Also, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). The Court should isolate and "ignore[ ]" any statements in a complaint that simply offer "legal conclusions" or merely rehash the elements of a cause of action. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010). To be clear, labels, conclusions, and formulaic recitations of elements of a cause of action are not sufficient. *Ashcroft v. Iqubal*, 556 U.S. 662, 677-78 (2009). This Court is not bound to accept as true legal conclusions pled as "factual allegation" in the Government's Complaint. *Id.*

9

To prevail on a claim under the FCA, the Plaintiff must plead and prove: (1) that there was a false statement; (2) made or carried out with the requisite scienter; (3) that was material; and (4) caused the Government to pay out money for that claim or statement. *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 465 (5th Cir. 2009). To prevail on a claim under Common Law Fraud, the plaintiff must plead "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Complaints alleging violations of the FCA or Common Law Fraud must set forth allegations of fraud with the degree of particularity required to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). See *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308-09 (11th Cir. 2002). Specifically, Federal Rule of Civil Procedure 9(b) places more stringent pleading requirements on claims alleging fraud. "[U]nder Rule 9(b) allegations of fraud must include facts as to time, place and substance of the defendant's alleged fraud." *United States ex rel. Clausen vs. Lab Corp. of Am., Inc.,* 290 F.3d. 1301, 1308 (11th Cir. 2002). Accordingly, the Government must allege "facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendants' allegedly fraudulent acts, when they occurred, and who

10

engaged in them to satisfy Rule 9(b).  The complaint must allege the "who," "what," "when," "where," and "how" of fraudulent submissions to the government. *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 847 F. Supp. 2d 1333, 1341 (S.D. Fla. 2012).   Additionally, the Government must allege "guilty knowledge of a purpose on the part of (the defendant) to cheat the Government," or "knowledge or guilty intent."  *U.S. ex rel Doe v. DeGregorio*, 510 F. Supp. 2d 877 (M.D. Fla. 2007) (quoting *Peterson v. Weinberger*, 508 F.2d 45, 53 (5th Cir. 1975)).

A kickback scheme must also be pled with particularity in an action under the False Claims Act (FCA) concerning claims. *United States v. Choudhry*, 262 F. Supp. 3d 1299 (M.D. Fla. 2017). A violation of the Anti–Kickback Statute occurs when a defendant: (1) knowingly and willfully; (2) offers, pays, or receives any remuneration, directly or indirectly; (3) to induce (or reward) a person to refer individuals to the defendants for the furnishing of medical services; (4) paid for by Medicare. *Id*. at 1307. The Eleventh Circuit, regarding the Anti-Kickback Statute, has defined the term "willfully" as committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." *United States v. Vernon*, 723 F.3d 1234, 1256 (11th Cir. 2013).

### B. The Government has Failed to Plead a False Claims Act Violation or Common Law Fraud

As discussed above, pleadings alleging FCA violations or Common Law Fraud are governed by the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  See *Corsello*, 428 F.3d at 1008; *U.S. ex rel. Clausen*, 290 F.3d at 1308-09. Rule 9(b)

11

"plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Morro v. Fed. Nat'l Mortg. Ass'n*, No. 6:13-CV-1309, 2014 WL 12625455, at *3 (M.D. Fla. May 12, 2014) (quoting *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).

The Eleventh Circuit has held that allegations of lack of medical necessity or clinical judgment cannot constitute a false statement or false claim. See, e.g., *U.S. v. AseraCare, Inc.*, 938 F.3d 1278, 1296–97 (11th Cir. 2019) (claim "based on the physician's or medical director's clinical judgment regarding the normal course of the individual's illness . . . cannot be 'false'—and thus cannot trigger FCA liability—if the underlying clinical judgment does not reflect an objective falsehood"). Health care providers often disagree with one another's clinical judgment, which does not establish fraud. As the Eleventh Circuit held in *AseraCare*, "[a] properly formed and sincerely held clinical judgment is not untrue even if a different physician later contends that the judgment is wrong." *Id*. at 1297; cf. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("a sincere statement of pure opinion is not an 'untrue statement of material fact' . . . regardless whether an investor can ultimately prove the belief wrong").

For a claim that a medical opinion is false to survive dismissal, there must be an "objective falsehood," *AseraCare, Inc.*, 938 F.3d 1278 at 1297. In *AseraCare*, the Eleventh Circuit provided several examples of ways to establish an objective falsehood in rendering clinical judgment: a certifying physician could fail to review the patients' records and condition before rendering their clinical judgment; the physician could subjectively not, in fact, believe his stated opinion; or evidence could show that no reasonable physician could have held an opinion. *Id.* Plaintiffs assert no such allegations, nor have they pleaded any facts to establish any objective falsehoods or false claims submitted to Medicare. Indeed, there are no allegations in the Complaint that Dr. Lubin misstated any diagnosis supporting the prescriptions, the prescriptions were not based on Dr. Lubin's professional judgment and for legitimate medical purposes, and/or that Dr. Lubin did not follow the protocols (TIRF and REMS) for off-label prescriptions of Subsys for the treatment of chronic non-malignant pain.

The Government's allegation that Dr. Lubin's Subsys prescriptions were fraudulent and not medically appropriate must fail as a matter of law. While the Government claims, without evidence that "it appears" Dr. Lubin's Subsys prescriptions were medically unnecessary, the Government's speculation is based only on noting that Subsys is approved by the FDA to treat breakthrough cancer pain, and that most of Dr. Lubin's Subsys prescriptions were written for patients who did not have cancer. The Government's Complaint contains no analysis whatsoever of why Dr. Lubin prescribed Subsys to patients without breakthrough cancer pain, or whether those prescriptions were medically appropriate according to Dr. Lubin's clinical

judgment. As the Government itself admits in its Complaint, both Medicare and TRICARE process claims for "off-label" use of prescription drugs under certain circumstances. (Complaint ¶¶ 54 and 68). Therefore, as the Government knows and admits, prescribing a drug "off-label" cannot, on its own, be evidence that a prescription is fraudulent, yet that is precisely what the Government alleges. (Complaint ¶¶ 152-59) The Government's fraudulent prescription allegation must therefore be supported with discussions of the patients themselves and whether their prescriptions were clinically appropriate, yet this information is nowhere in the Complaint. The Government's reliance on Patient 1 "suspect[ing] that Dr. Lubin referred her for follow up care "to cover his tracks" about prescribing Subsys is similarly unavailing. (Complaint ¶ 156). First, an unnamed patient attempting to infer the "true" reason for Dr. Lubin's clinical judgment is not a fact sufficient to support a fraud claim under Rule 9(b). Second, Dr. Lubin did not refer Patient 1 to an oncologist, but to another, unnamed doctor, who then referred Patient 1 to an oncologist. Putting aside the fact that prescribing Subsys to a patient without cancer is not automatically fraudulent according to the Government's own Complaint (despite the Government later asserting that it is), the Government admits that a third-party, and not Dr. Lubin, referred Patient 1 to an oncologist. The Government also does not discuss why Dr. Lubin referred Patient 1 to another doctor, and why that doctor then referred Patient 1 to an oncologist. Without this information, the Government's allegations are inferences only. Next, the fact that one of the patients who Dr. Lubin prescribed Subsys to later sued him for malpractice is irrelevant to whether the prescription was

clinically appropriate at the time. (Complaint ¶ 159). Finally, the temporal relationship between some of the speaking events that the Government describes as "shams," (Complaint ¶¶160-69), and certain prescriptions being written to Dr. Lubin's patients is irrelevant without more information about the patients themselves. As discussed above, while the Government has alleged that Insys fabricated the number of and participants in speaking events held by Dr. Lubin, the Government does not allege facts demonstrating that Dr. Lubin was aware of this or knowingly participated in Insys' bad acts, so the temporal relationship alone is irrelevant. The Government also admits that Medicare and TRICARE can and do pay for off-label prescriptions, so the fact that Dr. Lubin prescribed Subsys to patients without cancer does not, in and of itself, demonstrate that the prescriptions were fraudulent. Turning to the patients themselves, the Government does not allege any facts about the patients, why they were prescribed Subsys, and whether the Subsys prescriptions they received after these sham speaking events were their first Subsys prescriptions, or prescriptions written according to an ongoing treatment plan.

In addition, while the Government's Complaint does plead certain bad acts by Insys employees as part of the Insys speaker program, the Complaint does not allege that Dr. Lubin himself knowingly participated in these bad acts or was aware of Insys' bad intent. For example, while the Government alleges that Insys sales representatives submitted fraudulent documents after several events that Dr. Lubin participated in as part of the Insys speaker program, the Government does not plead facts showing that Dr. Lubin was aware of or participated in these fraudulent practices and/or that he

15

himself authored a fraudulent document. It is therefore irrelevant that Dr. Lubin prescribed Subsys to patients after these allegedly fraudulent meetings, without specific evidence from the Government that those prescriptions were medically inappropriate.

### C. Defendant Failed to Plead an Anti-Kick Back Violation

As stated above, a kickback scheme must be also be pled with particularity in an action under the False Claims Act (FCA) concerning claims. *United States v. Choudhry*, 262 F. Supp. 3d 1299 (M.D. Fla. 2017). A defendant must : (1) knowingly and willfully; (2) offer, pay, or receive remuneration, directly or indirectly; (3) to induce (or reward) a person to refer individuals to the defendants for the furnishing of medical services; (4) paid for by Medicare to violate the Anti-Kickback Statute. *Id*. at 1307. The Eleventh Circuit, regarding the Anti-Kickback Statute, has defined the term "willfully" "as committed voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law." *United States v. Vernon*, 723 F.3d 1234, 1256 (11th Cir. 2013).

A claim for services resulting from a violation of the Anti-Kickback Statute constitutes a false claim under the FCA. *Choudhry*, 262 F. Supp. 3d at 1307. Like the FCA, the Plaintiff must allege the "time, place, and substance of the defendant's alleged fraud." *Id*. Healthcare providers do not violate FCA simply by having a financial relationship with a doctor or another provider. *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 591 F. App'x 693, 706 (11th Cir. 2014). The *U.S. ex rel. Mastej* Court dismissed the Complaint which alleged financial incentive schemes in great detail,

16

including names, incentives received, employees who negotiated the incentives with the doctors, when and why they were provided and why they were illegal because the Plaintiff failed to allege particular dates or amounts of any claim that was submitted to Medicare for a patient referred. *Id.* at 706-707.

The Government fails to allege any fact indicating Dr. Lubin knowingly accepted remuneration for prescribing Subsys or intended to do something with bad purpose. The Government further fails to allege any facts that the Subsys prescriptions were false claims rather than prescribed in Dr. Lubin's medical judgment as medically beneficial and necessary treatment. Furthermore the Government has failed to plead with specificity particular dates and amounts of claims made to Medicare by Dr. Lubin, or caused to be made by Dr. Lubin.

Therefore, because the Government has failed to plead a claim for which relief can be granted and failed to plead fraud with specificity, Dr. Lubin requests this Court Dismiss Plaintiff's Complaint.

## II. CONCLUSION

Dr. Lubin participated in a speaker's program for Insys that the Government later determined Insys created for improper purposes to increase sales. The Government's Complaint against Dr. Lubin faults him for participating in the Insys speaker's program by citing to the negative information it developed about the speaker's program, but nowhere in the Complaint does the Government allege facts that tie Dr. Lubin to participating in the Insys speaker's program with actual knowledge of its purpose, or linking him to bad acts by Insys employees. Instead, the

17

Government infers Dr. Lubin's guilt through his participation in the program and the bad acts of Insys employees. However, inferences are not facts, and facts are necessary to sustain a Complaint under Rule 9(a). The Government pleads very specific facts with regards to Insys' own bad acts during the relevant time period due to the Government's lengthy investigation into its sales practices, yet does not allege similarly detailed facts in its allegations against Dr. Lubin. The Government failed to allege more than conclusory statements or threadbare recitals of the elements.  The governments factual allegations of fraud and possible anti-kickback violations fall only on Insys and its sales representatives.  Therefore, because the Government has failed to plead a claim for which relief can be granted and failed to plead fraud with specificity, Dr. Lubin requests this Court dismiss Plaintiff's Complaint.

    Respectfully Submitted,

    SISCO-LAW

    */s/ Dale R. Sisco*
    Dale R. Sisco, Esq.
    dsisco@sisco-law.com
    Florida Bar No. 559679
    Dominic A. Isgro
    disgro@sisco-law.com
    Florida Bar No. 113318
    1110 N. Florida Avenue
    Tampa, FL  33602
    (813) 224-0555
    (813) 221-9736 Facsimile
    *Attorneys for Edward Lubin, M.D.*

    and

        CAMPBELL TROHN TAMAYO
        & ARANDA
        Robert J. Aranda, Esq.
        r.aranda@cttalaw.com
        Florida Bar No.: 988324
        PO Box 2369
        Lakeland, FL 33806-2369
        (863) 686-0043
        (863) 616-1445
        *Co-counsel for Edward Lubin, M.D.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 26, 2021, I electronically filed the foregoing, with the Clerk of the Court, by using the CM/ECF system, which will send a notice of Electronic Filing to the following:

**Jeremy Ronald Bloor**
US Attorney's Office - FLM*
Suite 3100
400 W Washington St
Orlando, FL 32801
407-648-7500
Fax: 407-648-7643
Email: Jeremy.Bloor@usdoj.gov

        */s/ Dale R. Sisco*
        Attorney